UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| JOSE AVILA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 18-3117 |
| | ) | |
| WARDEN BLOUNT, et. al., | ) | |
| Defendants | ) | |

MERIT REVIEW ORDER

This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff, a pro se prisoner, claims four Defendants violated his constitutional rights including Jacksonville Correctional Center Warden Blount, Correctional Officer Newingham, Administrative Review Board Member Sara Johnson, and Correctional Officer John Doe.

Plaintiff says in October of 2017 he was approved for a transfer to the Jacksonville Correctional Center to take part in the facility's drug program. Plaintiff arrived in November of 2017, but Plaintiff claims he only participated in the drug program for one week before he was transferred to facility's work camp in Pittsfield, Illinois.

Plaintiff says he complained to Defendant Officer John Doe that "the work load was beyond his physical capabilities, based on his past medical condition." (Comp., p. 3). Plaintiff then references some attached medical records, but it is not clear what conditions he is claiming prevented him working or what specific work was beyond his abilities. Furthermore, the medical records are from 2013 and 2014, years before the alleged incidents in 2017. (Comp., Med. Rec., p. 1-8).

Defendant John Doe told Plaintiff if he did not work, he would be disciplined. When Plaintiff complained to Defendant Warden Blount, Plaintiff was told to quit complaining.

Two weeks later, Plaintiff was transferred to the Greene County Work Camp. Plaintiff says he continued to complain the work load was aggravating his medical condition. Plaintiff says ultimately, "[t]o avoid further injury," he "had no choice but to refuse the work assignment." (Comp., p. 3). Defendant Doe then issued Plaintiff a disciplinary ticket.

Plaintiff says during the disciplinary hearing, Defendant Newingham threatened Plaintiff with segregation, a transfer, and "more severe disciplinary action" if Plaintiff did not work. (Comp., p. 4) Plaintiff reported Newingham's threats to Warden Blount, but Plaintiff was told complainers "don't last long at Jacksonville." (Comp., p. 4).

It is not clear from Plaintiff's complaint if he received any specific discipline as a result of the first ticket written by Defendant Doe. Instead, it appears Plaintiff returned to his work assignment. Plaintiff again states the work was beyond his physical

capabilities, and Plaintiff again refused the work assignment. (Comp., p. 4). Therefore, Defendant John Doe wrote a second disciplinary ticket.

In his complaint, Plaintiff also mentions the Greene County Work Camp did not offer Catholic religious services. When he complained to Defendant Blount, the Warden told Plaintiff Catholic services were not a priority at the facility, but Plaintiff could attend Christian services.

During the second disciplinary hearing, Defendant Newingham told Plaintiff he would be returning to Centralia Correctional Center. Plaintiff spoke to Defendant Warden Blount about the drug program offered at Jacksonville, but the Warden told Plaintiff he did not have to worry about working, and Plaintiff could attend Catholic services at Centralia. Plaintiff says he was transferred to Centralia on March 7, 2018.

Since Plaintiff was no longer housed at the facility which formed the basis of his complaints, Plaintiff immediately filed a grievance and submitted it to the Administrative Review Board (ARB). The board received the grievance on April 4, 2018 and Defendant Johnson denied the grievance on April 16, 2018. The memo from the ARB noted Plaintiff's grievance did not contain any dates for the alleged incidents indicating it was filed within 60 days of the incident as required. (Comp., Ex. 10). Plaintiff does not state he resubmitted a grievance clarifying the dates of his complaint.

There are several problems with Plaintiff's complaint. First, Plaintiff does not clearly allege what medical condition he suffered from, what specific work he was unable to do, or how the work impacted his condition. The medical records provided do not refer to the relevant time period. In addition, Plaintiff does not explain how any

Defendant would have known of a medical condition which prevented him from working.

Plaintiff alleges Defendants were deliberately indifferent to his serious medical condition when they forced him to work, but again Plaintiff has not identified any specific medical condition which prevented him from doing the assigned work, nor has he explained specifically how the work impacted that condition.

Plaintiff says he was threatened with retaliatory acts, but he does not clearly articulate this claim. To state a retaliation claim, Plaintiff must allege: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in [Defendants'] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation marks and citation omitted).

If a plaintiff makes a *prima facie* case by establishing these three elements, a defendant can still prevail if he presents evidence demonstrating he would have taken the same action even without a retaliatory motive. *See Mays v. Springborn,* 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff,* 660 F.3d 975, 979 (7th Cir. 2011). In other words, "harm would have occurred anyway." *Mays*, 719 F.3d at 634-5.

It would be difficult for Plaintiff to state a retaliation claim alleging he was disciplined for complaining about his work assignment since Plaintiff admits he refused to the work prison officials told him to do, and prison officials warned him if he did not work, he would be disciplined.

In addition, Plaintiff makes a vague reference to good time credits. If Plaintiff is attempting to allege the disciplinary tickets were retaliatory and he lost good time credits as a result, he could not proceed with a retaliation claim unless he demonstrated the disciplinary ticket had been expunged. *See Heck v. Humphrey,* 512 U.S. 477, 487 (1994); *Edwards v. Balisok,* 520 U.S. 641, 648 (1997); *see also Newsome v Wexford Health Services*, 2007 WL 581812 at 7 (C.D.Ill. Feb. 20, 2007)("Since the Plaintiff is claiming the tickets were false and based on retaliatory action by the Defendants, these claims are barred by *Heck*).

While not clearly articulated, it appears Plaintiff may have intended to allege Defendant Blount violated his First Amendment right to practice his religion. However, Plaintiff does not even clarify that he is Catholic.

Plaintiff's complaint does not clearly articulate a constitutional violation. Whether or not Plaintiff can clarify his intended claims, he must be able to demonstrate he fully exhausted his administrative remedies before filing this lawsuit. 42 U.S.C. §1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo, v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002). If a prisoner fails to follow the specific requirements, his case will be dismissed. *Id.*

In the case at bar, the ARB informed Plaintiff his grievance did not contain any dates demonstrating he submitted his grievance within the required time frame. The grievance procedures specifically state a "grievance must be filed…within 60 days after discovery of the incident, occurrence or problem that gives rise to the grievance.

However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." *See* 20 Ill. Admin. Code § 504.810(a).

A review of Plaintiff's grievance demonstrates the only date included was November 1, 2017, yet he did not submit his grievance until March of 2018. (Comp., March 29, 2018 grv.). The ARB informed Plaintiff his grievance was deficient on April 16, 2018 due to the lack of any dates alleged within the 60 day time frame. Even if Plaintiff resubmitted a proper grievance with the necessary dates included, the ARB had six months after receipt of the grievance to provide a response. *See* 20 Ill. Admin. Code § 504.850(f). However, Plaintiff clearly did not wait for a response since he submitted his complaint to this Court one month later on May 18, 2018.

The Court also notes Plaintiff does not mention any problems with religious services in his grievance, and therefore he did not exhaust his administrative remedies for any allegation pertaining to the denial of Catholic services.

Failure to exhaust is an affirmative defense and typically the Court must wait for a Defendant to raise the issue. However, the Court may invoke an affirmative defense on behalf of an un-served defendant if it is clear from the face of the complaint that the defense applies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). The defense must be both apparent and unmistakable. *Walker*, 288 F.3d at 1010.

Based on Plaintiff's complaint, he either did not resubmit a grievance with specific dates alleged, or if he did submit a new grievance, he did not allow the ARB

time to respond. Either way, Plaintiff could not have completed the grievance procedure before he filed this lawsuit.

IT IS THEREFORE ORDERED Plaintiff's lawsuit is dismissed for failure to exhaust his administrative remedies as required before filing this lawsuit. *See* 42 U.S.C. §1997e(a).

ENTERED this12th day of October, 2018.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE